IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIFFANY SNADON,<br><br>    Plaintiff,<br><br>v.<br><br>SEW-EURODRIVE, INC., JOSEPH TETZEL, JOHN DOE 2 through JOHN DOE 3, and VINION L. ROBINSON, JR.,<br><br>    Defendants. | Civil Action No.<br>1:19-cv-02915-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendants' motion for summary judgment [ECF 48]. After careful review of the parties' briefing, Defendants' motion is **GRANTED**.

**I.   BACKGROUND**

The following facts are undisputed. On April 6, 2018, Plaintiff Tiffany Snadon was employed by non-party Nth Degree, Inc. (Nth Degree) to assist in assembling a truss structure for Defendant SEW-Eurodrive (SEW) at the Georgia World Congress Center.[1] Nth Degree specializes in assembling trade show displays and it, or its predecessor, had been hired by SEW at least 25 times to

---

1   ECF 48-6, ¶ 1.

construct truss structures for trade shows prior to that date.[2] SEW is a drive engineering and technology company and is not involved in the business of building trade show displays or truss structures.[3] Before any tradeshow for which it has engaged Nth Degree, SEW sends it a set of drawings that depict what the structure should look like when completed, but does not provide it with any instructions on how to assemble the structure.[4] Before the April 6, 2018 tradeshow, Nth Degree asked SEW if it would like Nth Degree to provide supervision and SEW declined, noting that it would provide its own supervision.[5] Defendant Joseph Tetzel served as the SEW employee overseeing Nth Degree's work, but testified that his role was merely to supervise the progress.[6]

During construction, while the truss structure was being raised, a specialized metal tool, provided by SEW and frequently used by Nth Degree,[7] fell

---

[2]  *Id.* ¶¶ 5, 8.

[3]  *Id.* ¶¶ 6, 8.

[4]  ECF 48-8, ¶ 21–22.

[5]  ECF 57-1, ¶ 4.

[6]  ECF 48-6, ¶ 26; ECF 57-1, ¶ 5.

[7]  *Id.* ¶¶ 11–12, 17.

from the structure and struck Snadon on the head.[8] Neither party knows how or when the tool was placed on the truss structure.[9]

On July 11, 2018, Snadon filed suit in the State Court of Fulton County, Georgia against SEW; Joseph Tetzel; William Huffstetler; and John Doe 1 through John Doe 3.[10] On May 17, 2019, Snadon filed her First Amended Complaint naming Vinion Robinson, Jr. as a Defendant, in place of John Doe 1.[11] Huffstetler was later dismissed and the remaining Defendants removed the case to this Court on June 25, 2019 based on diversity jurisdiction.[12] On April 22, 2020, Snadon moved for leave to file a second amended complaint, which alleged new facts and asserted a claim for premises-liability negligence,[13] which the Court denied as untimely.[14] Additionally, Liberty Mutual Insurance Company, Nth Degree's workers'

---

[8] ECF 48-7, ¶ 2; ECF 57-1, ¶ 6.
[9] ECF 57-1, ¶ 10.
[10] ECF 1-1.
[11] ECF 1-7.
[12] ECF 1.
[13] ECF 42.
[14] ECF 63.

compensation insurer, has intervened in this action to protect its subrogation lien against Snadon for payment of her workers' compensation benefits.[15]

After Snadon moved to amend her complaint, but before the Court ruled on the motion, Defendants moved for summary judgment.[16] They argue that SEW and its employees are not liable to independent contractors absent an act of affirmative negligence.[17] Snadon responded, arguing that SEW assumed a duty to supervise her and, regardless, is liable under the theory of premises-liability, as asserted in her proposed amended complaint.[18] Defendants have filed a reply in support of their motion,[19] and both sides have submitted statements of material facts.[20]

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[15]   ECF 65.

[16]   ECF 48.

[17]   ECF 48-1, at 1–2.

[18]   ECF 56.

[19]   ECF 57.

[20]   ECF 48-6 (Defs.' Statement of Material Facts); ECF 56-1 (Pl.'s Statement of Material Facts and Resp. to Defs.' Statement of Material Facts); ECF 57-1 (Defs.' Resps. to Pl.'s Statement of Additional Material Facts).

Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  DISCUSSION

Snadon devotes a large part of her opposition brief arguing that summary judgment is inappropriate because she has a valid claim based on premises-liability. As a result, Defendants also briefed the premises-liability issue. The Court will not address these arguments, however, as it denied Snadon's motion for leave to amend her complaint to add the premises-liability claim.[21]

Defendants' leading argument is that Snadon has failed to prove causation.[22] Indeed, neither Snadon nor Defendants know how the tool ended up on the truss structure or why it fell.[23] Defendants contend that this is fatal to Snadon's claim because there is merely a "possibility" of causation, which is insufficient to withstand summary judgment.[24] Snadon's theory of liability, however, is not that one or more of Defendants placed the tool on the truss structure or caused it to fall. Instead, Snadon asserts that Defendants assumed a

---

[21]  ECF 63.

[22]  ECF 48-1, at 9.

[23]  *Id.* at 10.

[24]  *Id.*

duty to supervise the truss construction and, therefore, are liable for negligently allowing the tool to remain on the truss structure while it was being lifted into the air.[25] The Court must determine, therefore, what duties Defendants owed Snadon as an employee of an independent contractor and whether they included duties to supervise or inspect.

Under Georgia law,

> The employer of an independent contractor owes the contractor's employees the ubiquitous duty of not imperiling their lives by his own affirmative acts of negligence. It is also the general rule that the independent contractor's employer is under no duty to take affirmative steps to guard or protect the contractor's employees against the consequences of the contractor's negligence or to provide for their safety.

*Rayburn v. Ga. Power Co.*, 284 Ga. App. 131, 134 (2007) (internal punctuation omitted) (quoting *United States v. Aretz*, 248 Ga. 19, 24 (1981)). Therefore, as a general matter, SEW did not owe Nth Degree or its employees, including Snadon, a duty to ensure a safe working environment.

*Rayburn* is instructive. There, the plaintiff brought suit against a power company for serious injuries he sustained while clearing land for a new powerline. *Id.* at 131. The plaintiff alleged that the power company negligently managed the

---

25   ECF 56, at 6–7.

construction because it "knowingly and unnecessarily exposed [the plaintiff] to an unreasonable risk of serious injury" by requiring him to clear timber by hand instead of by machine. *Id.* at 134–35. The Georgia Court of Appeals affirmed the grant of summary judgment against the plaintiff, finding in relevant part that, even though Georgia Power inspected the results of the work, it did not control the method or manner of land clearing, and therefore was not responsible for the independent contractor's safety program. *Id*. at 138. The court noted, "[m]erely taking steps to see that the contractor carries out his agreement, by supervision of the intermediate results obtained, or reserving the right of dismissal on grounds of incompetence, is not such interference and assumption of control as will render the employer liable." (quoting *Perry v. Ga. Power Co.*, 278 Ga. App. 759, 761 (2006)).

Recently, the Georgia Court of Appeals reiterated this limit on liability. *Wilson v. Guy*, 356 Ga. App. 509, 514 (2020). In *Wilson*, that court reversed the trial court's denial of summary judgment, finding that the defendant, who hired the plaintiff and one other construction worker as independent contractors, had no duty "to train the independent contractor[s] in exactly how to perform the work or to provide supervision to ensure the work was performed in a particular way," and therefore was not liable for any act of negligence by the independent contractors that resulted in the plaintiff's injuries. *Id.* at 414–15.

In this case, the undisputed facts show that Tetzel's supervisory role was limited to ensuring that Nth Degree constructed a trade show display that reflected SEW's expectations.[26] SEW had no role in controlling the method or manner in which the truss structure was constructed and Tetzel was not in charge of Nth Degree's employees. Tetzel's role is similar to the "supervisor" in *Rayburn*, who visited the site sporadically to "inspect the results of the clearing work and expressly not to control the method or manner of service performance." 284 Ga. App. at 138. Thus, Defendants are not liable for the alleged negligence because SEW was "under no duty to take affirmative steps to guard or protect the contractor's employees against the consequences of the contractor's negligence or to provide for their safety." *Id.* at 134. The misunderstanding as to what Tetzel's role was is not enough to create a material dispute as to whether SEW exerted control over Nth Degree or Snadon sufficient to make either a SEW employee.[27]

---

[26] *See e.g.* ECF 48-6, ¶¶ 5–7 (Nth Degree specializes in construction trade show booths, SEW does not); *id.* ¶ 21–22 (before a trade show SEW sends a drawing of what the structure should look like but no instructions on how to build it); ECF 56-1 (not objecting to Defendants' statements in ECF 48-6 ¶¶ 5–7; 21–22); ECF 57-1, ¶ 5 (Tetzel's responsibilities included "generally" overseeing, managing, and inspecting construction); ECF 48-3, at 14 ("Plaintiff states she does not recall having any communications or observations of Defendant Joseph Tetzel at the scene of the accident.").

[27] ECF 57-1, at ¶ 4.

Snadon also fails to show an affirmative act of negligence. Indeed, in both *Rayburn* and *Wilson*, the alleged deficiencies in supervision were specific. In *Rayburn*, the defendant allegedly instructed the independent contractor to use a notoriously dangerous method for cutting down trees, 284 Ga. App. at 134–35, and, in *Wilson*, the defendant allegedly allowed the independent contractors to use gasoline to light a pile of brush on fire from only a foot away. 356 Ga. App. at 513–14. And yet, in both cases, the Georgia Court of Appeals found that the employer was not liable because it had no duty to supervise or control its independent contractors. By contrast, in this case, the only evidence of negligence is the fact that the specialized tool was improperly left on the truss structure. Snadon has not shown what SEW, through Tetzel, did or failed to do, and therefore cannot show affirmative negligence.

Snadon cites to several cases, mostly premises-liability cases, to support her argument that Defendants can be liable for failing to inspect the trade show booth, but these cases are inapposite as they have nothing to do with an alleged failure to supervise an independent contractor. *See, e.g.*, *Brownlee v. Winn-Dixie Atlanta, Inc.*, 240 Ga. App. 368, 369 (1999) (inaction can be basis of premises-liability claim); *Huggins v. Aetna Cas. & Sur. Co.*, 245 Ga. 248, 248 (1980) (insurance company may

be liable to employee where it was hired to inspect allegedly dangerous machine that caused employee's injury).

The Court finds that Defendants are not liable because Snadon has not alleged an affirmative act of negligence and neither SEW nor its employees owed her a duty to inspect the premises of the trade show or to supervise Nth Degree's employees' method of constructing the truss structure. Snadon's claims are dismissed. As Intervenor Liberty Mutual Insurance Company's claims are dependent on her success,[28] its claims are also dismissed.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion for summary judgment. Plaintiff's claims and Intervenor Liberty Mutual Insurance Company's claims are **DISMISSED WITH PREJUDICE**. The Clerk is **INSTRUCTED** to close the case.

**SO ORDERED** this the 28th day of January 2021.

Steven D. Grimberg
United States District Court Judge

---

[28] ECF 65, ¶ 14 ("Pursuant to O.C.G.A. § 34-9-11.1, Intervenor files this complaint of intervention to recover in accordance with this statute should Plaintiff recover from the Defendant.").